TAYLOR *v.* STATE.

4702                                                   251 S. W. 2d 588

Opinion delivered October 13, 1952.

*Chas. F. Cole* and *S. M. Bone,* for appellant.

*Ike Murry,* Attorney General and *Dowell Anders,* Assistant Attorney General, for appellee.

WARD, J. C. E. Taylor, appellant, was charged by information on 16 counts for forging and uttering certain title-retaining notes. There were eight separate notes involved, supposedly signed by eight different people, all of which were sold to one J. Fred Livingston. At the beginning of the trial the Court instructed a verdict of not guilty on the first four counts [involving two separate charges of forgery and two of uttering] because they were barred by the statute of limitation. Later on the Court instructed a verdict of not guilty on all remaining counts for forgery, and appellant was tried and convicted on all remaining six counts for uttering. Punishment was fixed at two years in the penitentiary on each count to run concurrently and sentence was accordingly pronounced. Appellant prosecutes this appeal.

In view of the conclusion we hereafter reach, only a brief outline of the facts will be sufficient. Appellant had for some time been engaged in Batesville in buying and selling secondhand automobiles. As is usual in such

a business, when appellant sold a car he would take a title-retaining note from the purchaser for a portion of the sales price and would then sell the note in order to secure money to make other purchases for resale; and, also, as is usual, he would require the purchaser to take out insurance on the car as a matter of financial protection to himself and the one to whom he sold the note.

All the notes involved in this case were sold at a discount to one J. Fred Livingston, who in turn sold them with recourse to the First National Bank at a smaller discount. Livingston, who was engaged in the insurance business, also wrote an insurance policy on each car involved, supposedly getting his information relative to name, address, occupation, etc., from the appellant.

After several monthly payments were made to the bank on each note here involved, the payments stopped and the bank quite naturally looked to Livingston for payment. It then developed, after thorough investigation, that none of the automobile purchasers and note signers could be located or identified. This led to the assumption that the names of the supposed purchasers were fictitious and that the notes were forgeries, and, of course, led to the charge against appellant.

The enforcement officers shrewdly surmising, it seems, that it was going to be difficult to produce testimony showing appellant's guilty knowledge that the notes were forgeries when he sold them to Livingston, had a subpoena issued for appellant's wife sometime before the trial. She appeared before the sheriff and the prosecuting attorney and gave them a specimen of her handwriting. At the trial this specimen of handwriting was introduced by the State as "Exhibit D" to the sheriff's testimony, over the objections of appellant. A handwriting expert, using "Exhibit D" as a basis of comparison, testified that in his opinion appellant's wife had written the fictitious names on the said notes. It is not and cannot be denied that this testimony was calculated to lead the jury to believe appellant had knowledge that

the notes were forgeries at the time he sold them to Livingston.

Although several questions are raised by appellant there is only one which we need to decide, and that is: was "Exhibit D" admissible in evidence? After careful deliberation by the Court, we have reached the conclusion that "Exhibit D" should not have been admitted in evidence.

At common law neither spouse was a competent witness against the other. Following this statement made in the case of *Jenkins* v. *State,* 191 Ark. 625 at page 627, 87 S. W. 2d 78, the Court said: "This Court is thoroughly committed to the rule stated above except in so far as it has been changed by statute." Then, immediately after this, the Court also said: "It goes without saying that this rule might be changed by statute, but such a statute, being in derogation of the common law, must be strictly construed."

In 1903 such a statutory change was made by Act No. 81 [now Ark. Stats., § 43-2020] which permitted one spouse to testify against the other in criminal cases in which an injury has been done by one against the person or property of the other. This statute has been construed many times and obviously affords no support to the State's position here. See *Murphy* v. *State,* 171 Ark. 620, 286 S. W. 871, 48 A. L. R. 1189; *Robison* v. *State,* 191 Ark. 455, 86 S. W. 2d 927; and *Sutton* v. *State,* 197 Ark. 686, 122 S. W. 2d 617.

The only other statutory change in the common law regarding the admissibility of a spouse's testimony in criminal cases was Act No. 14 of 1943 [now Ark. Stats., § 43-2019]. This statute clearly cannot be invoked by the State because appellant's wife was not called by him to testify, as the statute provides.

Therefore, since it is obvious that appellant's wife could not have been called to the witness stand by the State to give a specimen of her handwriting, the admissibility of "Exhibit D" can be sustained only on the

ground that it was obtained before the trial and in the manner above set forth. There are no decisions by our court directly on this point and neither do we find such decisions in other jurisdictions. This leaves us to reason and to examine cases which may throw some light on the question.

In *People* v. *Bladek,* 259 Ill. 69, 102 N. E. 243; *State* v. *Smith,* 215 Ia. 374, 245 N. W. 309; and *Molyneux* v. *Wilcoxson,* 157 Ia. 39, 137 N. W. 1016, 41 L. R. A. N. S. 1213, under statutes similar to ours, it was held that a wife is not competent to testify against her husband before a grand jury. In our State, prosecuting attorneys have in a sense replaced grand juries and have been given the power to subpoena witnesses. It seems to us that it would be a violation of the holdings indicated above to approve the method used here to secure information from appellant's wife. In fact, it appears to us to be a more direct violation of the common law rule than to permit such testimony before a grand jury which has no power to convict.

Constitutional Amendment No. 21, giving the prosecuting attorneys the power to try offenses on information as well as on an indictment by a grand jury, was passed in 1936 and declaration of adoption was made in the General Assembly on January 12, 1937. The same General Assembly passed Act No. 160 [now Ark. Stats., § 43-801] giving the prosecuting attorneys and their deputies the authority to issue subpoenaes in connection with the investigation of all criminal matters and to administer oaths. It may be significant that the Act states that such oath shall have the same effect as if administered by the foreman of the grand jury. It may also be significant that the emergency clause recognizes the necessity of the Act is based on the less frequent meetings of the grand jury and the necessity of the "prosecuting attorney to subpoena witnesses in order to properly *prepare* [emphasis ours] criminal cases." Had the General Assembly by this Act intended to abrogate the common law prohibition against a wife's testimony in criminal cases it should have said so, especially since our court has said,

as noted before, that the Act in this particular must be strictly construed.

We recognize the fact that our court has approved in certain instances the use of testimony illegally obtained, but even so this case can be distinguished because here overt action on the part of the wife was necessary. Nor is it a sufficient answer to say the wife could have refused to cooperate, for it is common knowledge that the average person is not always aware of his rights in such instances and, also, that most people are impressed by the dignity of the processes of the law. It is only fair to appellant's wife to assume that she would not have voluntarily and knowingly given testimony calculated to convict her husband of a felony. We are loathe to approve a method of legal procedure that might conceivably be used to trap or coerce a person into discarding a right or privilege guaranteed by law. If there were other ways by which a sample of the wife's handwriting could have been obtained, then there was no necessity for the method here employed. On the other hand, if it could be obtained only from the wife, it serves to emphasize the importance of protecting her right not to assist in the prosecution of her husband.

The holding in the case of *Brummett* v. *Commonwealth,* 33 Ky. L. R. 355, 108 S. W. 861, confirms the view we take. There the State offered evidence of a conversation between a wife and the co-defendant of her husband which tended to show his guilt. Under a statute like ours, the court refused to admit the testimony on the ground that, in effect, it would make the wife an unwilling witness against her husband.

The State, in securing the handwriting specimen of appellant's wife and offering it in evidence in the manner described, was attempting to do something indirectly which could not be done directly, and, in our opinion, should not be condoned.

The judgment of the lower court is reversed and the cause is remanded for a new trial.