Carter A. WORLEY Jr. a/k/a Jack WORLEY *v.*
STATE of Arkansas

CR 75-177                               533 S.W. 2d 502

Opinion delivered March 8, 1976

*Jon R. Sanford* and *James R. Pate,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Jackson Jones,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Carter A. Worley, Jr., was tried on a two-count indictment charging him with obtaining money under false pretenses. The first count charged that he had falsely represented to Mr. and Mrs. Albert Ford, for whom he was building a house, that certain material bills had been paid for the purpose of inducing them to authorize additional construction. In the second count, he was charged with having, on August 23, 1973, fraudulently altered a promissory note executed by the Fords with the intent to defraud the Fords and the Bank of Dover of $10,000. He was acquitted of the first count, but found guilty of the second, in a jury trial held on October 29, 1974. We find no reversible error and affirm.

The first contention made by appellant is that there was prejudicial error in the denial of his motion for continuance. Worley was charged by information filed on October 25, 1973. His motion was made on October 18, 1974 and heard at a pretrial conference on October 28, 1974. The motion was written, but not verified by affidavit. In the motion, Worley alleged that, after the information was filed, he was informed by "the State" that he would not be prosecuted, and was not told that the case would be tried until about October 1, 1974 and was not arraigned until October 10, 1974. He also alleged that he did not make any arrangements to be represented by counsel until October 18, 1974, and that his attorney did not have sufficient time to properly prepare for trial on October 29. He further alleged that certain documents important to his defense were in the possession of parties residing in Kansas and the time for obtaining those documents before trial was insufficient. Worley asked a continuance for at least 60 days, saying that he could prepare his defense and obtain the documents within that time.

The granting or denial of a motion for a continuance lies within the sound judicial discretion of the trial judge. *Cox* v. *State*, 257 Ark. 35, 513 S.W. 2d 798; *Thacker* v. *State*, 253 Ark. 864, 489 S.W. 2d 500. There is no abuse of discretion in the denial of this motion which failed to meet the statutory requirements, which include verification under oath. Ark. Stat. Ann. §§ 27-1403 (Repl. 1962), 43-1706 (Repl. 1964). See, *Carter* v. *State*, 196 Ark. 746, 119 S.W. 2d 913; *Thacker* v. *State*,

supra. The allegations of the motion are deficient in that no reason for his delay in employment of counsel from October 1 to October 18 is stated and the conclusional allegations about the evidentiary documents he desires were extremely vague, not only as to the description of the documents and a statement of their relevance, but as to the identity of their custodian. The motion, on its face, did not state facts which would constitute grounds for a continuance. *Conway* v. *State,* 256 Ark. 131, 505 S.W. 2d 758; *Brown* v. *State,* 252 Ark. 846, 481 S.W. 2d 366; *Parker* v. *State,* 179 Ark. 1064, 20 S.W. 2d 113. But, even worse, although appellant was given the opportunity to substantiate any ground alleged for continuance when the motion came on for hearing, he failed to do so. When the state controverted the allegation that Worley had been told by the state that he would not be prosecuted on the charges, his attorney offered to show by testimony of Worley that the impression had been left with him that he would not be, and that he had no information to the contrary until he was advised in early October of his impending arraignment on October 10. This proffer was rejected by the judge, who held that it was immaterial, noting that the charge had remained pending since its filing. It is notable that the proffer does not include any indication of the manner in which Worley was left with his impression or any justification for such a belief.

If defense counsel was tardily employed, Worley failed to show that anyone except him was to blame. There is no indication that Worley is or was indigent. According to Worley's testimony, the attorney who did represent him at the trial and on the motion was the same lawyer who had assisted him in posting bail on the charge and this attorney had stated then that he would not further represent appellant until appellant had arranged to employ him for defense of the charge. In the intervening period he had consulted the same attorney about civil litigation and there were probably some conversations about the charges during the time the attorney was representing him in these matters. Worley said that he received a letter about October 7 advising him that the case was to be tried and that he actually learned that he was to come to the courthouse for arraignment by a call from this attorney's office. Even then "financial arrangements" for the employment were not made until October. If counsel was

handicapped in preparing for trial, it was because of Worley's dilatory action and he was entitled to no relief on that account. See *Gathright* v. *State*, 245 Ark. 840, 435 S.W. 2d 433; *Nash* v. *State*, 248 Ark. 323, 451 S.W. 2d 869; *Shinsky* v. *State*, 250 Ark. 620, 466 S.W. 2d 911.

Worley's testimony about the documentary evidence was little better than his allegation. He revealed that, at the time of his alleged criminal conduct, he was employed by, but not a stockholder of, Worley Construction Company, a corporation, of which his son, daughter and wife were the major stockholders, that the company had subsequently gone out of business and its records packed up for safekeeping. Except to say that the corporation actually was the builder of the house for the Fords and that the records were important to his defense, he failed to inform the court of the relevance and materiality of the records he sought or to further identify them or their contents. He was very indefinite about where or in whose custody they were, except that his mother-in-law and father-in-law had possession of them in Kansas. He did say that he had notified the parties concerned and had been promised, when he was able to reach these people by telephone during the preceding week, that these records would be mailed but that he had not received them. When the judge asked what assurance there was that this evidence would be available if additional time was granted, appellant's attorney said the documents were principally cancelled checks. Worley only verbally assured the court they would be forthcoming. Without more definite information or better assurance of the availability of these documents, the trial court was justified in denying a continuance on this ground. *Brown* v. *State*, supra; *Thacker* v. *State*, supra; *Conway* v. *State*, supra; *Shinsky* v. *State*, supra. It would appear, at least superficially, that the records sought would more likely relate to the charge on which appellant was acquitted than that on which he was convicted. There is no error in denial of a motion for continuance to obtain evidence that is not material and relevant. *Morphew* v. *State*, 84 Ark. 487, 106 S.W. 480; *Padgett* v. *State*, 171 Ark. 556, 286 S.W. 819.

Even though the denial of his motion for continuance was included as an allegation of error in motion for new trial

filed by appellant, he gave no additional information about the documentary evidence he sought or about prejudice. He only said that it unjustly deprived him of the right to accumulate evidence, obtain witnesses (not identified) or confer with counsel in order to adequately defend himself. The motion for new trial was not denied until nearly eight months had elapsed after the trial. The burden of showing abuse of discretion in denial of a continuance was on appellant. *Cox* v. *State,* 257 Ark. 35, 513 S.W. 2d 798. He failed to meet it.

Appellant attacked the jury panel by motion to quash because jurors whose names were on a panel that had been quashed previously were not put back into the jury wheel when the panel from which the jury in his case was drawn was drawn from the jury wheel. It was shown that 100 names were drawn from an 850-name jury wheel on March 18, 1974 and 40 more on June 26, 1974, but that this combined panel was quashed on October 11, 1974, and a new panel drawn for the remainder of the April, 1974 term and for the November, 1974 term. Somehow it was calculated that when this last panel was drawn there were only 660 names in the wheel and that many of the 140 persons whose names had been originally drawn either did not serve or had not fully served the time they could have been required to do so. The circuit judge had specifically directed that these names not be returned to the jury wheel. It is appellant's contention that the statute required that there be at least 800 names in the jury wheel when a panel was drawn. The record does not disclose how many days any of these 140 persons might have been required to report for jury duty. It is clear that the 100 drawn in March had been subject to call for six months. No juror may be required to report for more than a six-month period or to report for more than 24 days. Ark. Stat. Ann. § 39-104 (Supp. 1974). There was probably good reason for the court to direct that these names not be returned to the jury wheel. Ark. Stat. Ann. § 39-212.1 (Supp. 1975) contains a provision that the circuit judge may, in the exercise of his discretion, direct the jury commissioners to submit additional names to be placed in the jury wheel prior to any additional drawing of jurors. There is no requirement that the minimum number of 800 names be constantly maintained after the original panel has been drawn from it. This is not the same situation we had in

*Horne* v. *State,* 253 Ark. 1096, 490 S.W. 2d 806. There the trial court deviated from the statutory requirement that there be a new jury wheel for each calendar year by simply adding 74 names to the 1970 jury wheel in order to constitute the 1971 jury wheel. The flaw that occasioned our disapproval of the procedure by which the chancery court used 96 names drawn from a jury wheel which were not placed in the jury book nor returned to the jury wheel in *Shelton* v. *State,* 254 Ark. 815, 496 S.W. 2d 419 was that these 96 people were rendered un- available for use in criminal cases. We said the better procedure would have been for the chancery court to take its jurors from the list on the jury book and to return them for future use in other trials. This is an entirely different situa- tion.

Another objection to the jury panel was that there were two or three persons on the list of 850 who were not registered voters. The clerk of the court explained that this meant that when these people were called to serve they were not qualified electors but that the circuit judge always directed such people to register to vote. It is not indicated that any of these people served on appellant's jury or even that they were on the panel drawn from the wheel. There is no indication that their names were not on the voter registration list when selected by the jury commissioners. It is, as the state suggests, quite possible that their names were subsequently removed. At any rate, we cannot say that the inclusion of three names of per- sons not qualified out of a list of 850 would invalidate the en- tire list, or a panel drawn from it.

Appellant also contends that the manner in which the list was made up invalidated it. He says that the typing of the list selected by the commissioners by a secretary of one of them invalidated the jury wheel. His argument is based upon the absence of any written oath filed by the typist and of any docket entry to the effect that any oath had been ad- ministered. He also contends that the typist was given the list by her employer and never met any of the other jury com- missioners who did not verify the authenticity of the list given her either in person or by signatures or initials. There was also testimony that the marked voter registration list iden- tifying those selected from it remained unsafeguarded in her

desk during the entire two-week period required for her typing of the list. The office was open to the public during working hours and several persons had access to it both day and night. The typist testified that she was brought to the court where an oath was administered by the circuit judge. The manner in which she described the oath indicated that it was in conformity with the statute. We find no error in the court's accepting her testimony about this matter and we certainly could not say that her employment was unauthorized if the judge actually administered the oath to her. The trial judge made a specific finding that there had been substantial compliance with the statute. Even though we think that better precautions probably should have been taken and better records kept, we cannot say that the trial court's finding was erroneous.

Appellant asserts error in the denial of the admission into evidence of what he describes as "business records." Appellant testified that James Morrow, office manager, did all of the paper work in the construction company office and that, to the best of his knowledge, the note on which the charge was based was prepared by Mr. Morrow. On this note the figures indicating the amount actually read "$16,000." The complaining witness testified that the note had been altered from $6,000. The note itself showed that the figure "1" did not appear on the same level as the remainder of the figures in the principal amount, being a little lower. All of the figures were typed. Appellant proffered as exhibits a purported copy of a letter from Morrow to appellant, carbon copies of seven checks and two contracts. On some of these there were irregularities in the typing so that letters in the same word did not all appear on the same line. In making the proffer appellant's attorney stated that this was a *random sampling of papers* from the construction company's business and that all of them were prepared by Morrow, who was dead at the time of trial and that these papers were prepared in the regular course of business and had been in the sole exclusive possession of appellant since their preparation and that they reveal irregularities of the location of numbers with reference to lines on the page showing that the typewriter could be responsible for the mislocation of the "1" in the principal sum appearing on the face of the note. The proffer was refused on the basis of hearsay.

Appellant argues here that these exhibits were admissible under the Business Records Act Ark. Stat. Ann. § 28-928 (Repl. 1962). Whatever might be otherwise said about their admissibility, they are certainly not admissible under the Business Records Act. The section to which appellant refers makes writings made as a memorandum or record of any act, transaction, occurrence *or event,* if made in the regular course of business and if it was the regular course of such business to make such memo or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter. The records simply were not proffered as evidence of any *act, transaction, occurrence,* or *event* of which they could be considered as a memorandum or record. There was no attempt to make a business record of the manner of operation of a typewriter and the transactions recorded were wholly irrelevant to the case on trial.

The only purpose of the act was to eliminate the necessity of calling as witnesses everyone who had knowledge of the transaction in order to remove the hearsay objection to the record and declarations therein as evidence of the particular matter recorded, which would otherwise be inadmissible, and nothing else. See *Shehtanian* v. *Kenny,* 156 Cal. App. 2d 576, 319 P. 2d 699 (1957); *Fagan* v. *Newark,* 78 N.J. Super. 294, 188 A. 2d 427 (1963); 30 Am. Jur. 2d 52, Evidence § 933; McCormick on Evidence (2d Ed.) 729, § 312; 2 Jones on Evidence (6th Ed.) 355, § 12.11; V Wigmore (Chadbourne Rev.) 489, § 1561 a. The fact stated in the entry made must be material, relevant and evidentiary as to the issue. *D'Amato* v. *Johnston,* 140 Conn. 54, 97 A. 2d 893, 38 ALR 2d 772 (1953).

Appellant also attempted to testify that Morrow had stated in the presence of the complaining witnesses, their attorney and appellant that he (Morrow) prepared the note in question in his office on his own typewriter with the amount shown as $16,000 and that it had not changed form from the time he made it and gave it to appellant for signature by the complaining witness up to the time of the conference at which he made the statement. The circuit judge held that this was hearsay and obviously introduced as truth of the matter asserted. We agree with the trial judge. This certainly was not offered to show whether the statements or declarations

were made and we do not understand the hearsay rule to be relaxed just because of the difficulty of obtaining other proof, as appellant contends. The exception relied upon by him, even if otherwise applicable, requires that the declarant be disinterested, that his statement must have been before the dispute or litigation, and that it be made without bias on account of existence of a dispute which the declarant might be disposed to favor. *St. Louis, I.M. & S. Ry. Co.* v. *Gibson,* 113 Ark. 417, 168 S.W. 1129. The declaration was made in connection with the dispute so the statement of Morrow could not come within this exception.

The judgment is affirmed.

The Chief Justice, Mr. Justice Byrd and Mr. Justice Holt dissent.

CONLEY BYRD, Justice, dissenting. The only count upon which the jury found appellant Worley guilty was that he altered a $6,000 note signed by Mr. and Mrs. Ford to read $16,000. The main evidence upon which the State relied to show the alteration was the fact that the "1" in the figure $16,000 was not in line with the remainder of the figures. To counter this proof Worley sought to introduce, under the "Business Records as Evidence Act," Ark. Stat. Ann. § 28-928 (Repl. 1962), other prior business transactions that had been prepared by his office manager, James Morrow, to show that the mis-location of the "1" was due to Morrow's typing and not to a subsequent alteration. Among the records proffered was a draft to Gosnell Buick-Chev. Co. (attached hereto as an appendix) which shows that, on the typewriter used, the lower case "l" was also used as the numeral "1" and that in the figure $90.11 the 11¢ was not in line with the remainder of the figures. Neither was the "11" in Gosnell in line with the remainder of the name Gosnell. At the time of trial Morrow was dead; thus, it became necessary to show that both the proffered records and the Ford note in question were prepared by the same man. To lay the foundation for that proof, Worley sought to prove the Gosnell Buick-Chev. Co. transaction to establish that the draft was made while Morrow worked for him. The trial court, without objection from the State, ruled such evidence hearsay and collateral

and would not permit its introduction. Somehow, the majority says it is not relevant.

The hearsay ruling by the trial court was clearly erroneous. As pointed out in *Frampton* v. *Hartzell,* 179 Cal. App. 2d 771, 4 Cal. Rptr. 427 (1960), it is true that business records are hearsay, but "nevertheless they are admissible as being an exception to the hearsay rule, hence an objection only that they are hearsay is not a valid objection."

Neither can it be said that the proof offered is collateral or not relevant. The conduct of the jury leaves no doubt about the relevancy or materiality of the evidence — *i.e.* their desire to compare the typing on the note with other typing of Morrow is demonstrated by the following excerpt from the record:

> "THEREUPON, after a period of deliberation by the Jury, the Jury returned into open court and with the defendant present the following proceedings were had:
>
> THE COURT: Members of the Jury, I am advised by the bailiff that you have a question.
>
> FOREMAN: Yes, Your Honor. The question came up to us, several members of the jury would like to see them other two notes, the first two six thousand dollar notes.
>
> THE COURT: Only the evidence which has been introduced in this case is . . .
>
> FOREMAN: They're not, they're not available?
>
> THE COURT: They're not introduced in this case, no, sir. Only the evidence which was introduced in this case may be submitted to the jury for your consideration.
>
> . . .
>
> JURY AGAIN RETIRES."

The majority's assertion that the records "simply were

not proffered as evidence of any *act, transaction, occurrence,* or *event* of which they could be considered as a memorandum or record" is neither supported by the record nor the authorities upon which it relies. In *McCormick on Evidence* § 312 (2d ed. 1972), cited by the majority, it is stated:

> "Implementing the common law exception, courts have traditionally required that one offering proof under the regularly kept records exception either call as witnesses all links in the organizational chain by which the entry was made, *i.e.,* all entrants, informants, and intermediaries, or establish their unavailability. This was not part of the requirement of unavailability. To the contrary, it assumed that availability did not render the proof inadmissible, apparently on the reasonable anticipation that the participants would not remember the particular transaction at issue. The requirement was one as to the manner of proving that the offered record met the other requirements of the exception.

> In light of present business practices, the common law requirement is clearly unreasonable. The complex nature of modern business organizations is such that all participants in the preparation of a record can most often not be identified or, if they can be pinpointed, could not reasonably be expected to have any helpful recollection concerning the specific transactions at issue. Moreover, production of the large numbers of participants that would be required would be a substantial burden on the offering party, a burden not likely to be justified by the benefits to be derived from requiring production of all participants. The revisions of the exception have dealt with this problem in various manners. The Commonwealth Fund Act did not deal with the matter expressly, although it seems clear that it was proposed principally to alleviate the burdensome method of proof required by some courts under the common law rule. The same is true of the Model Code of Evidence and the Uniform Rules of Evidence. On the other hand, the Uniform Act, the Texas statute, and the Proposed Federal Rules specifically provide that the foundation may be laid by 'the custodian or other

qualified witness' thus expressly rejecting the requirement that all participants be called."

In 5 *Wigmore on Evidence* § 1561a (Chadbourn rev. 1974), cited by the majority, we find the following comment:

> "This proposed rule was after a long interval adopted by legislation in a few states; in Rhode Island, the attempt to improve upon it produced an inferior pedantic formulation. The liberal interpretation of it by courts should serve to give the exception a rational relation to the search for truth. But much depends on whether the preverse stolidity of the juristic mind can be compelled by a few statutory words to leave its accustomed ruts."

Now, obviously, if Morrow had been alive, he could have been called to show that the records proffered were made on the dates in question in connection with the business transaction that they represented. Likewise, if the parties to the transactions, such as those at Gosnell Buick-Chev. Co., had been called, their testimony would have been relevant to show that the event represented by the record actually took place on that specific date. If the proof of those parties would have been permissible to show the events and the time of their occurrence; then, obviously, the records were admissible under the "Business Records as Evidence Act" as construed by the authorities cited in the majority opinion.

For the reason stated, I respectfully dissent.

HARRIS, C.J. and HOLT, J., join in this dissent.

446

*APPENDIX* #CR-75-117

WORLEY CONSTRUCTION CO., INC.
107 SOUTH BOULDER
RUSSELLVILLE, ARKANSAS 72801

544

81-329
821

PRE-DATED CHECK
11-26-72

(voucher date)
12-20-71

$90.11.

Gosnell Buick -Chev. Co
Russellville, Ark.

WORLEY CONSTRUCTION, INC.

BANK OF DOVER
DOVER, ARKANSAS 72837    ⑆08 21 ⑈0329⑆

NOT NEGOTIABLE -

WORLEY CONSTRUCTION CO., INC.
RUSSELLVILLE, ARK.

| DATE | DESCRIPTION | AMOUNT | DISTRIBUTIONS | |
|---|---|---|---|---|
| | | | ACCT. NO. | AMOUNT |
| 12-20-71 | Repairs  INVOICE - 2062 | | | $90.11 |

EMPLOYEE

| PERIOD ENDING | EARNINGS | | | | | DEDUCTIONS | | | | | TOTAL DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | HOURS | RATE | AMOUNT EARNED AT REGULAR RATE | OVERTIME AND OTHER | TOTAL EARNINGS | SOCIAL SECURITY TAX | WITHHOLDING U.S. INC. TAX | STATE INCOME TAX | | | | |
| | | | | | | | | | | | | |