Louis T. MARTIN, Jr. *v.* STATE of Arkansas

CR 86-83                                          718 S.W.2d 938

Supreme Court of Arkansas
Opinion delivered November 10, 1986

*William R. Simpson, Jr.*, Public Defender, and *Thomas B. DeVine, III*, Deputy Public Defender, by: *Donald K. Campbell, III*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant was convicted of first degree murder and first degree battery. We affirm the murder conviction but reverse the battery conviction.

On the afternoon of the murder, appellant, his girlfriend, her mother and brother, and a man named Lonnie drove from North Little Rock to Sweet Home to pick up a voucher for milk. Upon their arrival in Sweet Home, appellant asked to get out of the car at the end of Neely Road. As he was getting out he asked Lonnie to pick him up in ten to fifteen minutes on the way back to North Little Rock. Mike Callahan, who was murdered by appellant, was among several persons who were gathered on Neely Road at that time. Those who witnessed the murder testified, in general, that appellant and victim Callahan went behind a vacant building for a short period of time, and when they came back around to the front yard, they were arguing. They were still arguing when Lonnie returned to pick up appellant. Appellant walked to Lonnie's car, which was parked in the street, took a gun from under the seat, went back to the victim in the yard, and twice shot him.

Appellant's version of the occurrence was that in the weeks and days preceding the shooting, the victim had placed a bomb in his car, had pointed a gun at him, had shot at him, and had threatened to kill him. Appellant knew that the victim sometimes carried a gun. On the day of the shooting, the two of them were arguing when the victim picked up a brick in his right hand, drew back, and said, "I will kill you." His left hand was in his clothes as if he had a gun. At that time, Lonnie returned with the car and drove to a point in the road about ten yards away. Appellant walked away from the victim, went to the car, reached under the back seat, got a pistol, walked back to the victim, who still had the brick in his right hand with his left hand in his clothes, and they exchanged words. "[H]e raised the brick in the air like he was going to hit me, so I pulled the pistol and I shot below his waist line." Appellant testified that the second shot into the victim was accidental. The shooting of Mike Callahan resulted in the murder charge.

The appellant did not testify that the victim followed him to the car when he went to get his pistol, nor did he testify that the victim made any additional threats while appellant was at the car.

All of the witnesses agree that after Callahan had been murdered appellant started walking away, and, when he had gone about twenty yards, Dovie Woods aimed a pistol at his back. Someone warned appellant, who then turned around and shot Ms. Woods. She testified that if she had more time she would have shot appellant. The shooting of Dovie Woods resulted in the battery charge.

Appellant requested justification, or self-defense, instructions on both the murder charge and the battery charge. The trial court refused to give the instructions for either charge.

██ The trial court made the correct ruling in the murder case. In that case all of the evidence, including appellant's testimony, shows that appellant did not use all reasonable means to avoid the killing. Once he returned to the car, he had reached a port of safety and could have gone home and avoided killing Callahan. Yet, it is undisputed that after reaching safety, he went back to the confrontation with a loaded pistol and killed Callahan. Ark. Stat. Ann. § 41-507 (Repl. 1977) provides that one "may not use deadly physical force in self defense if he knows that he can avoid the necessity of using that force with complete safety . . . by retreating. . . ." The commentary provides:

> "[o]ne who claims self-defense must show not only that the person killed was the aggressor, but that the accused used all reasonable means within his power and consistent with his safety to avoid the killing." [citation omitted] Under most circumstances "reasonable means" includes retreat where retreat can safely be effected.

██ The appellant acknowledges the foregoing statute and commentary, but argues that it was for the jury, not the court, to decide whether the appellant could have safely avoided killing Callahan. From that, appellant argues the justification instruction should have been given. We find no merit in the argument. There must be some rational basis for submitting an instruction to the jury. *Hughes* v. *State*, 260 Ark. 399-A, 540 S.W.2d 592 (1976). Here, the undisputed proof was that appellant walked away from Callahan, went to the waiting car, got his loaded pistol from under the car seat, and then walked back to the place of confrontation and killed Callahan. He could have avoided the use of force with complete safety. Therefore, he was not entitled to

the instruction on justification.

■ However, justification was an available defense in the battery case. In that case the defendant was walking away from the murder when Dovie Woods aimed a pistol at his back. She admitted she would have shot him. A bystander warned appellant that he was about to be shot when he turned around and shot Woods. There was substantial evidence that the requirements of Ark. Stat. Ann. § 41-507 (Repl. 1977), the justification statute, were met because appellant could not have retreated with complete safety and was assaulted in a manner sufficient to cause a realistic fear for his life.

■ The conviction for first degree battery is reversed while the conviction for first degree murder is affirmed. The remaining question is, "What mandate should be issued?" The offenses charged, first degree murder and first degree battery, are separate and distinct offenses, defined by separate and distinct statutes, and each charge required separate and distinct evidence for conviction. When a judgment in a criminal case is correct as to one count, but erroneous as to another, as in this case, we have the power to sever the judgment, affirm the count on which the appellant was properly convicted, and reverse and grant a new trial as to the other. Such a procedure is used by the Eighth Circuit Court of Appeals, *United States* v. *Greene*, 591 F.2d 471 (8th Cir. 1979), by our Court of Appeals, *Gross* v. *State*, 8 Ark. App. 241, 650 S.W.2d 603 (1983), and by other states, *see, e.g.*, *People* v. *Schnebley*, 27 A.D.2d 639, 275 N.Y.S.2d 763 (1966). The fact that charges must be joined at the time of filing does not mean that they cannot be severed, either before trial or upon appeal.

■ We have examined the two findings of guilt to determine if there is any evidence to indicate that the jury's decision to fix appellant's sentence at 5 years on the battery count could have affected the 30 year sentence on the murder count. We find no such evidence. Thus, a remand on only the battery count will not violate the concurrent sentences rule. *See Lee* v. *Lockhart*, 754 F.2d 277 (8th Cir. 1985).

The conviction for first degree murder is affirmed; the conviction for first degree battery is reversed and remanded.

GEORGE ROSE SMITH, HICKMAN, and HAYS, JJ., dissent.

DARRELL HICKMAN, Justice, concurring in part and dissenting in part. My objection only relates to remanding this case for a retrial on the battery charge. We are violating our own procedural rules and placing this defendant in jeopardy twice.

The murder and battery charges were required to be tried together because they were of a similar character (both shootings) based on ". . . a series of acts connected together or constituting parts of a single scheme or plan." A.R.Cr.P. Rule 21.1. Indeed the second shooting occurred immediately after the first, and the defense is so interrelated with the facts of the first they cannot be separated in the second trial ordered.

We would not have allowed the state to first try Martin for murder and later for battery. This is the very kind of prosecution we ruled impermissible in *Cozzaglio* v. *State*, 289 Ark. 33, 709 S.W.2d 70 (1986). In that case the charges were rape and kidnapping, separate offenses not included within the other that arose from one episode. The state sought two trials which we barred. Now we are approving two trials. The defendant will go into the second trial convicted of murder, unable to argue and defend that he was not guilty of the murder charge which is so closely related to the battery charge.

We have never affirmed a conviction for one offense and remanded a case for retrial of another, which were tried together. The reason we have not is obvious — it violates our own rules and the principle of double jeopardy. That principle is not just to prevent a second trial for the same offense. It has a procedural aspect which prevents harassment or repeated trials for conduct that arises from one episode. *Ashe* v. *Swenson*, 397 U.S. 436 (1970).

We can affirm the murder conviction and order the other charge dismissed unless the state elects to retry the whole case. *Davis* v. *State*, 118 Ark. 31, 175 S.W. 1168 (1915). But we cannot twice place this defendant in jeopardy.

These charges could not have been severed and the defendant tried separately as intimated by the majority. We held on October 20, in *Crook* v. *State*, that A.R.Cr.P. Rule 21 prohibited a separate later trial for a charge that arose out of the same

episode.

The statement by the majority that it can find no evidence that the jury considered the 30 year sentence when it set the five year sentence is incredible. We have no idea how or why the jury set the sentence it did. That is the very reason we should send the case back for a complete new trial.

This defendant cannot obtain a fair trial on the second charge which is necessarily connected to the first. He cannot expect to defend himself on a related charge when the jury will know he is guilty of the primary charge.

What will the new jury be told? The majority does not say, because it does not know what will be done at the second trial. Whatever transpires will not be a fair trial according to a fair interpretation of our cases or procedures.

GEORGE ROSE SMITH and HAYS, JJ., join in this dissent.