Natal EICHELBERGER and Johnny Elam *v.* STATE of
Arkansas

95-992                                916 S.W.2d 109

Supreme Court of Arkansas
Opinion delivered February 26, 1996

552

*William M. Pearson*, for appellant Natal Eichelberger.

*Roderick H. Weaver*, for appellant Johnny Elam.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellants Natal Eichelberger and Johnny Elam, along with two other young men, destroyed property owned by the Lamar School District, United States Corps of Engineers, Gary Hamilton, and Jack Cline, Sr. The juvenile division of chancery court conducted a bifurcated hearing at which it first adjudged appellants to be delinquents and then determined the amount of restitution they are to make. Before the restitution phase of the hearing began, appellants presented a motion *in limine* asking that restitution be limited to $2,000 for each victim. The basis for the motion was that the property was destroyed on April 2, 1994, and at that time, restitution could not exceed $2,000 for each victim. Ark. Code Ann. § 9-27-331(d) (Repl. 1993). The State contested the motion and contended that the amount of allowable restitution was raised to $10,000 by Acts 61 and 62 of 1994. Appellants responded that the 1994 acts became effective on August 26, 1994, or four months after defendants destroyed the property, and that the retroactive application of the 1994 acts would violate the *ex post facto* provision of the Constitution of the United States. The trial court denied appellants' motions and ordered them to pay $9,956.47 to one of the victims, Jack Cline, Sr. The trial court ordered appellants to make restitution of less than $2,000 to the Lamar School District, the Corps of Engineers, and Gary Hamilton.

Appellants' first point of appeal is that the trial court's ruling applying the 1994 acts violated the *Ex Post Facto* Clause. The argument is well taken. Sections 9 and 10 of Article I of the Constitution of the United States prohibit Congress or the States from enacting *ex post facto* laws. A law is prohibited as *ex post facto* when it authorizes punishment for a crime because of an act previously done and which was not a crime when done, *"makes more burdensome the punishment for a crime, after its commission,"* or deprives one charged with a crime of any defense that was available according to law at the time when the act was committed. *Beazell* v. *Ohio*, 269 U.S. 167, 169-70 (1925)

(emphasis added). The retroactive enhancement of a penalty is just as onerous as the retroactive creation of a penalty. *Calder* v. *Bull*, 3 U.S. (3 Dall.) 386 (1798). Several state and federal courts have considered whether restitution is a "penalty" that falls within the Constitutional prohibition of *ex post facto* laws, and they are unanimous in holding that an increase in the amount of restitution constitutes the increase of a penalty.

In *Spielman* v. *State*, 471 A.2d 730 (Md. App. 1984), the Maryland Court of Appeals remanded a case in which the defendants were ordered to pay restitution for malicious destruction of property under a statute passed after the commission of the offense. The statute added insurance companies to the victims that could receive restitution. *Id.* at 733. The State argued that the statute was procedural and provided " 'only for a new method for enforcement of a preexisting right.' " *Id.* The trial court agreed, but that appellate court vacated and remanded the judgment, stating that it viewed the amended statute as "creating a right in [third-party payors] not existing under the previous statute and, therefore, one of substance and not procedure." *Id.* In response to the State's argument that restitution is not punishment, the court said, "It can hardly be contended that one who has been ordered to pay restitution, as a condition of probation, and is subject to revocation of that probation for failure to make payment, has not received punishment." *Id.* at 734. The opinion concludes, "Having determined that restitution of these amounts is punishment, it follows that to require the appellants to pay restitution in far greater amounts to the third party payors is to increase that punishment." *Id.* at 735.

The Arizona Court of Appeals was confronted with facts comparable to the facts of the case at bar in the case of *In the Matter of the Appeal in Maricopa County Juvenile Action No. J-92130*, 677 P.2d 943 (Ariz. App. 1984). There, the statute authorized the juvenile court, when committing a delinquent to the Department of Correction, to also impose a monetary assessment and to order restitution. *Id.* at 944. The offense was committed on July 5, 1983, and the law went into effect on July 27, 1983. *Id.* The State argued that "in light of the unique procedures involved in the juvenile court setting and particularly, the focus on rehabilitation in the dispositional phase," restitution is not punitive in nature, but only a part of the State's scheme of

rehabilitation of juveniles. *Id.* at 945. The court agreed with the State that the *ex post facto* prohibition only applies to laws dealing with criminal punishment, but held that the rehabilitative focus of juvenile proceedings is not dispositive. *Id.* at 946. It noted that the United States Supreme Court in *Breed* v. *Jones*, 421 U.S. 519 (1975) made applicable in juvenile proceedings "those constitutional guarantees associated with traditional criminal prosecutions," with the exception of jury trial. *Id.* It held that it was "too late in the day" to conclude that dispositions for juveniles, which include incarceration, fines, and restitution, "are not to be considered criminal sanctions for the purposes of the *ex post facto* clause." *Id.* The court took note of the fact that sanctions had been increased to permit the imposition of a fine and restitution where they were not previously permissible, and in addition, the conditions of parole had been modified to make payment of the fines and restitution a condition of release. *Id.* It concluded that this was the type of "legal disadvantage" contemplated by *Weaver* v. *Graham*, 450 U.S. 24 (1981), in which the Supreme Court set out the following two-pronged test to determine whether there is an *ex post facto* violation: (1) The statute must be retrospective, and (2) the statute must disadvantage the offender.

In *People* v. *Slocum*, 539 N.W.2d 571 (Mich. App. 1995), the Michigan Court of Appeals held that retroactive application of a statute authorizing the court to order the defendant to pay for extradition costs increased the defendant's punishment, as it increased the amount of restitution for which he would be responsible, and thereby violated the *Ex Post Facto* Clause. In *State* v. *Short*, 350 S.E.2d 1 (W. Va. 1986), the West Virginia Supreme Court of Appeals held that retroactive application of the Victim Crime Protection Act, which requires the defendant to pay restitution beyond his period of probation, increased his punishment and was an *ex post facto* application of law. Finally, the Sixth Circuit Court of Appeals in *United States* v. *Streebing*, 987 F.2d 368 (6th. Cir. 1993) and in *United States* v. *Jewett*, 978 F.2d 248 (6th. Cir. 1992), held that expanded definitions of "victim" in acts passed after the offenses were committed created additional rights and increased applicable penalties, making retroactive application *ex post facto*.

■■■ Acts 61 and 62 of 1994, as applied to appellants,

constituted a violation of the *Ex Post Facto* Clause. The 1994 acts increased the burden of the punishment to the juveniles. The scheme of the statute is punitive, as it allows for revocation of probation if restitution is not paid. *See* Ark. Code Ann. § 9-27-339(f) (Repl. 1993 & Supp. 1995); *compare with In the Matter of the Appeal in Maricopa County Juvenile Action No. J-92130*, 677 P.2d at 946. The trial court ordered appellants to pay Jack Cline, Sr., more than $2,000. We have held that the statutory limits apply *per victim. Leach* v. *State*, 307 Ark. 201, 819 S.W.2d 1 (1991). Thus, the trial court erred in applying the 1994 acts to appellants and in ordering them to pay in excess of $2,000.00 to Jack Cline, Sr. Accordingly, we reverse and remand the part of the order relating to Jack Cline, Sr.

■ Appellants next contend that the trial court erred in admitting proof of Gary Hamilton's damages. The trial court allowed Gary Hamilton to prove his damages with an invoice from a windshield-repair company that was addressed to Hamilton's insurance agent. It reflected that the glass company would charge the insurance company $511.59 to replace the broken windshield. The invoice was hearsay because it was a written assertion made out of court and offered into evidence to prove the amount of damages. *See* Ark. R. Evid. 801 and 803; *Wilburn* v. *State*, 317 Ark. 73, 876 S.W.2d 555 (1994). The State tacitly recognizes that the ruling was erroneous, but contends that it was harmless.

■■ We have often held that we will not reverse where the evidence erroneously admitted was merely cumulative. *See Williams* v. *Southwestern Bell*, 319 Ark. 626, 893 S.W.2d 770 (1995). Here, the State contends that Hamilton testified to the amount of his damages aside from the invoice, and as a result, the invoice was merely cumulative. The record does not support the State's contention. Gary Hamilton never testified to the amount of his damages. The closest he came to such testimony was when he stated that he did not file a claim with his insurance company because his insurance policy had a $500 deductible provision. However, this did not constitute proof of the amount of the damages, as he would have made that statement if his damages were anywhere between $1.00 and $500. Thus, we must reverse and remand the part of the order relating to restitution to Gary Hamilton.

■ Appellants next contend that the trial court made an erroneous evidentiary ruling when it allowed the State to introduce an itemized list of damages to prove the amount of restitution for the Corps of Engineers. We need not address the argument in any detail. The itemized statement reflected damages to the Corps of Engineers in the amount of $1,374.70, but in making their hearsay objection, appellants stated, "We would object to anything other than the $382.00." The trial court ordered appellants to make restitution to the Corps of Engineers in the amount of $382.00. Thus, the ruling allowing the entire itemized statement into evidence did not prejudice appellants.

■ In their final argument, appellants contend that the trial court erred in refusing to grant their motions for a directed verdict on that part of the bifurcated trial involving restitution. In making the argument, they first contend that the trial court erred in admitting evidence as set out in the first three points of appeal, and they next contend that, when the erroneously admitted evidence is excluded, the remaining evidence is insufficient to support the orders of restitution. The argument is based upon a false premise about appellate review. In determining the sufficiency of evidence, an appellate court reviews all of the evidence introduced at trial, whether correctly or erroneously admitted. *Findley* v. *State*, 300 Ark. 265, 778 S.W.2d 624 (1989). If substantial evidence was presented, but prejudicial trial error occurred, the case is reversed and remanded. If, however, after considering all of the evidence, whether correctly or erroneously admitted, the party having the burden of proof failed to prove its case by the appropriate standard, the case is reversed and dismissed. If the evidence was sufficient, the appellate court considers other assignments of trial error. If it was insufficient, the case is reversed and dismissed and there is no need to consider the other arguments. This is the reason an appellate court routinely first considers sufficiency of the evidence. *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984).

Affirmed in part; reversed and remanded in part.