The Honorable Jay Bradford State Senator Post Office Box 8367 Pine Bluff, Arkansas 71611-8367
Dear Representative Bradford:
This is in response to your request for an opinion on six questions concerning Act 989 of 1997, the "Sex and Child Offender Registration Act of 1997." Your questions are restated and addressed below. For purposes of clarity, the order of your first and second questions has been reversed.
Question 1 — Is the information collected pursuant to Act 989 subject topublic inspection or is it limited to disclosure pursuant to guidelines tobe promulgated by the Child Abuse/Rape/Domestic Violence Commission?
In my opinion, information from registration records maintained pursuant to Act 989 may, in all likelihood, only be disclosed to the public in accordance with guidelines promulgated by the Child Abuse/Rape/Domestic Violence Commission. The registration records are, therefore, not subject to public disclosure under the Arkansas Freedom of Information Act (FOIA), codified at A.C.A. § 25-19-101 et seq.
Section 25-19-105(a) of the FOIA provides that all public records shall be open to public inspection "[e]xcept as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise. . . ." A statute, however, need not refer to the FOIA by name or statute number in order to qualify as a "specific" exemption. John Watkins, Arkansas Freedom of Information Act 141 (2d ed. 1994). In section 13 of Act 989, the General Assembly clearly stated its intent to restrict access to the sex and child offender registration records. Section 13 provides in part:
 (a) Registration records maintained pursuant to this act shall be open to any criminal justice agency in this state, the United States, or any other state. Registration records may also be open to government agencies authorized by law to conduct confidential background checks.
 (b)(1) Local law enforcement agencies having jurisdiction shall disclose, in accordance with guidelines promulgated by the Child Abuse/Rape/Domestic Violence Commission, relevant and necessary information regarding offenders to the public when the disclosure of such information is necessary for public protection.
 (c)(1) The Child Abuse/Rape/Domestic Violence Commission shall promulgate guidelines and procedures for the disclosure of relevant and necessary information regarding offenders to the public when the release of the information is necessary for public protection. . . .
 (2) The guidelines and procedures shall identify factors relevant to an offender's future dangerousness and likelihood of reoffense or threat to the community. The guidelines and procedures shall also address the extent of the information to be disclosed and the scope of the community to whom disclosure shall be made as these factors relate to the level of the offender's dangerousness, the offender's pattern of offending behavior, and to the need of community members for information to enhance their individual and collective safety. . . .
 (h) Nothing in this section shall be construed to prevent law enforcement officers from notifying members of the public exposed to danger of any persons that pose a danger under circumstances that are not enumerated in this act.
(Emphasis supplied.) It is my opinion that section 13 is a specific expression of legislative intent with regard to when information should be disclosed to the public. It is also my opinion that, in all likelihood, this expression of legislative intent is sufficiently specific to exempt the records from general disclosure to the public under the FOIA.
In a comparable situation, I opined that the law pertaining to records of the Arkansas Crime Information Center (ACIC) qualifies as a specific exemption to the open records provisions of the FOIA. See Op. Att'y Gen. Nos. 93-106, 91-111, and 86-20. I stated that the General Assembly clearly indicated its intent to restrict access to ACIC records in A.C.A. § 12-12-211(a) which provides:
 The center shall make criminal records on persons available only to criminal justice agencies in their official capacity, to regulatory agencies with specific statutory authority of access, and to any person or his attorney who has reason to believe that a criminal history record is being kept on him, or wherein the criminal defendant is charged with either a misdemeanor or felony.
See also A.C.A. § 12-12-212 (imposes penalty for disclosure to unauthorized person). Similarly, in Opinion 91-111 I also opined that A.C.A. § 27-50-906 governs the release of the traffic violation records maintained by the Office of Driver Services and that the expression of legislative intent with respect to the release of an abstract of a driver's record is sufficiently specific to qualify as an FOIA exemption. Section 27-50-906 provides that the Office of Driver Services may furnish an abstract of a driver's record to the driver, law enforcement officers, government agencies, and persons to whom the driver has authorized disclosure. Finally, I have opined that A.C.A. §12-10-317(a)(2) appears to qualify as an exemption to the FOIA. See Op. Att'y Gen. Nos. 93-126 and 90-236. Section 12-10-317 provides that 911 subscriber information "shall be used only for the purpose of responding to requests for emergency service from public or private safety agencies, for the investigation of false or intentionally misleading reports of incidents requiring emergency service response, or for other lawful purposes."
It should also be noted that the information collected pursuant to Act 989 is to be maintained in a central registry by the ACIC. The criminal records and criminal history information maintained by the ACIC are exempt from the general public disclosure requirements of the FOIA. See
A.C.A. § 12-12-211(a); Op. Att'y Gen. Nos. 93-106, 91-111, and 86-20; A.C.A. § 12-12-1003(e) (criminal history information collected and maintained by the ACIC is not considered public record information within the intent and meaning of the FOIA).
Question 2 — Would lists of names and information previously gatheredpursuant to the Habitual Child and Sex Offenders Registration Act be amatter of public record or protected from disclosure under 12-12-909?
In my opinion, any information compiled pursuant to the "Habitual Child Sex Offender Registration Act," codified at A.C.A. § 12-12-901 et seq.
(repealed by Act 989 of 1997), is exempt from public disclosure.
As discussed in my response to question one, section 25-19-105(a) provides that all public records shall be open to public inspection "[e]xcept as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise. . . ." Arkansas Code Annotated § 12-12-909 provided:
 The statements or any other information required by this subchapter shall not be open to inspection by the public and specifically are not subject to the provisions of the Arkansas Freedom of Information Act, § 25-19-101 et seq., nor may this data be obtained by any person other than a law enforcement officer or other individual as may be authorized specifically by law.
Thus, it is clear that § 12-12-909 was a law "specifically enacted" to provide for exemption of records from public disclosure.
As noted in your letter, Act 989 of 1997 repealed the Habitual Child Sex Offender Registration Act (HCSORA), including § 12-12-909. It is, however, my opinion that the General Assembly did not intend for information previously compiled pursuant to the HCSORA to be open to public disclosure. It is well established that "all statutes are to be construed as having only a prospective operation, unless the purpose and intention of the Legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used."Gannett River States Pub. Co. v. Arkansas Jud. Disc. Disabil. Comm'n,304 Ark. 244, 801 S.W.2d 292 (1990). It appears that the General Assembly simply intended to abolish the existing registration requirements of the HCSORA and replace those requirements with the requirements of Act 989. Consequently, registration information obtained prior to the repeal of the act, which was protected under the act, is not open for public inspection.
In Gannett, supra, the Arkansas Supreme Court addressed a comparable issue. In May 1990, the court adopted rules of confidentiality applicable to the Judicial Discipline and Disability Commission. See In the Matterof Rules 7 and 9 of the Rules of Procedure of the Arkansas JudicialDiscipline and Disability Commission, 302 Ark. 633, 790 S.W.2d 143
(1990). The 1990 order permitted greater disclosure than the prior rule under which the commission had been operating. See In the Matter of Rulesof Procedure of the Arkansas Judicial Discipline and DisabilityCommission, 298 Ark. 654, 770 S.W.2d 116 (1989). Prior to the 1990 order, the remedy of "private reprimand" was available to the commission as a sanction to impose upon judges. Under the new rule, any action taken by the commission after an investigation had to be communicated to the judge by letter which became public information. Gannett sought disclosure, in accordance with the new rules, of commission actions which occurred before the new rules went into effect and were protected under the old rules. The circuit court held that the Supreme Court did not clearly express an intention to disturb the judges' interest in continued confidentiality in actions taken in reliance on the earlier rules. On appeal, Gannett asserted that the issue was whether it was entitled to obtain the documents under the new rule rather than whether it was entitled to them before the confidentiality provisions were changed.
The court stated that a judge who may have been investigated and cleared of wrongdoing or privately reprimanded prior to the change in the rules had a right under the former rules not to have the commission's action disclosed. The court noted that one definition of retroactive is "that which acts upon a thing which is past," and one definition of "retroactive law" is "one which has the effect of disturbing a vested right." The court concluded that "to declare that the records held by the commission of its actions which were protected under the former rule are to be released under the new rule would have an effect on antecedent rights of those judges who may have been investigated and cleared or reprimanded under the assumption that the nondisclosure rule applied." The court stated that such an action would be retroactive application under either definition, and nothing in the new rule suggested that its application should be retroactive.
My conclusion is also supported by the provisions of Act 989 which make it clear that the General Assembly does not intend for all registration information regarding sexual offenders to be open to the public. See
Response to Question One. The release of registration information compiled pursuant to the HCSORA would, to some extent, defeat the purpose of Act 989.
Finally, unlimited public disclosure of the registration information compiled pursuant to the HCSORA could give rise to a claim that the disclosure constitutes punishment in violation of the constitutional prohibition against ex post facto laws. See Kansas v. Myers, 923 P.2d 1024
(Kan. 1996), cert. denied 117 S.Ct. 2508 (1997). A law is generally prohibited as ex post facto when it "makes more burdensome the punishment for a crime, after its commission." Eichelberger v. State, 323 Ark. 551,916 S.W.2d 109 (1996). In Myers, the Kansas Supreme Court concluded that the unlimited public disclosure provision of the Kansas Sex Offender Registration Act constituted punishment. The court stated that the unrestricted public access given to the sex offender registry was excessive and went beyond that necessary to promote public safety. The court further stated that to avoid the ex post facto characterization, public access should be limited to those with a need to know the information for public safety purposes. See also Russell v. Gregoire,
1997 WL 539074 (9th Cir. Sept. 4, 1997) (Notification provisions of Washington Community Protection Act do not amount to punishment subject to the ex post facto clause; notification provisions were intended to be regulatory and not punitive; Act authorizes public agencies to release "relevant and necessary information" regarding a sex offender to the public when "necessary for public protection"); E.B. v. Verniero,119 F.3d 1077 (3d Cir. 1997) (notification requirements of New Jersey Registration and Community Notification Laws do not constitute punishment on Tier 2 and Tier 3 registrants for purposes of ex post facto clause; in the case of registrants posing a moderate risk (Tier 2) of reoffense, notification is generally issued to schools, day care centers, and other community organizations; in the case of registrants posing a high risk (Tier 3) of reoffense, members of the public likely to encounter the registrant are notified). If it is possible for the court to construe an act so as to meet the test of constitutionality, it will do so.Arnold v. Kemp, 306 Ark. 294, 813 S.W.2d 770
(1991).
Question 3 — Do these guidelines [see question one] currently exist and,if so, where are they found?
It is my understanding that the Child Abuse/Rape/Domestic Violence Commission is currently in the process of drafting guidelines and procedures for the disclosure of information regarding sex and child offenders to the public. State Representative Carolyn Pollan is the acting chairperson of the commission.
Question 4 — Is there an obligation on the part of the local lawenforcement agency to seek out these sex offenders in prior records andnotify them and/or seek to register them?
In my opinion, the answer to this question is "no." Although certain offenders are required to register with the "local law enforcement agency having jurisdiction," Act 989 does not appear to impose any obligation upon the law enforcement agency to seek out such offenders in order to notify the offender of the registration requirement or to register the offender. Only the Department of Correction, the Department of Community Punishment, the Department of Human Services, and the Administrative Office of the Courts are required to establish procedures for notifying offenders of the obligation to register. Act 989 of 1997, § 15. It should, however, be noted that a law enforcement officer shall arrest an offender when he has reasonable grounds for believing that an offender is not registered or has not reported a change of address in violation of Act 989. Act 989 of 1997, § 12.
Question 5 — If so, how far back in time is the law enforcement agencyrequired to go?
In light of the response to question four, an answer to this question is unnecessary.
Question 6 — Section 5(5) states, "an offender adjudicated prior to theeffective date of the Act not confined or under supervision is to beregistered." In sections 5(2), 5(3) and 5(4), persons in the Departmentof Correction, Department of Community Punishment or being sentenced bythe court are to be registered by those agencies. Who has the obligationto register persons currently on a suspended sentence or probation to acounty probation department?
Initially, I note that your question misquotes section 5(a)(5) which provides:
 An offender required to register on the basis of an adjudication of guilt prior to the effective date of this act who is not confined or under supervision on the effective date of this act shall register with the local law enforcement agency having jurisdiction no later than thirty (30) days after the effective date of this act.
In Opinion 97-292 (copy enclosed), I opined that this provision applies to a person who was required to register under the Habitual Child Sex Offender Registration Act and who was not confined or under supervision on August 1, 1997.
Generally, section 4 of Act 989 identifies the individuals subject to the registration requirements, and section 5 identifies who is responsible for registering those individuals. The legislature did not intend for the registration requirements of Act 989 to apply to every person who, prior to the effective date of the act, was adjudicated guilty of a sexually violent offense, a sex offense, or an offense against a victim who is a minor. See Op. Att'y Gen. 97-292. In Opinion 97-292, I noted that with regard to persons adjudicated guilty of an offense prior to the effective date of Act 989, the legislature intended for the registration requirements to apply only to those persons who, on the effective date of the act, were (1) required to be registered pursuant to the Habitual Child Sex Offender Registration Act or (2) serving a sentence of incarceration, probation, parole, or other form of community supervision as a result of an adjudication of guilt for a sexually violent offense, a sex offense, or an offense against a victim who is a minor. See Act 989 of 1997, § 4. Further, with regard to persons adjudicated guilty of an offense prior to the effective date of the act, sections 5(a)(2) and 5(a)(3) place the responsibility for registering persons confined or under supervision on the effective date of the act upon the Department of Correction and Department of Community Punishment, depending upon who is responsible for supervision.
The registration requirements of Act 989 clearly apply to a person who, on the effective date of the act, was on probation or under some "other form of community supervision" as a result of an adjudication of guilt for an enumerated offense.[1] Act 989 of 1997, § 4(a)(2). It is my opinion that a person on "probation to a county probation department" was on probation, and a person who received a suspended imposition of sentence was under a form of community supervision. Accordingly, the registration requirements of Act 989 apply to a person on probation to a county probation department and a person who received a suspended imposition of sentence. The procedure for registration of such offenders, however, is somewhat unclear.
With regard to a person who has had imposition of his sentence suspended, I assume that the person was not required to register under the Habitual Child Sex Offender Registration Act and that the person was not assigned to the Department of Community Punishment, see A.C.A. §16-93-1206. With regard to an individual on "probation to a county probation department," I assume that the person was not also under the supervision of the Department of Community Punishment and that the person was not required to register under the Habitual Child Sex Offender Registration Act. As previously discussed, the Department of Correction and Department of Community Punishment are responsible for registering offenders who are under their supervision in the community. Act 989, however, does not specifically assign responsibility for registering an offender who is under supervision in the community, but who is not the responsibility of either the Department of Community Punishment or the Department of Correction. Thus, judicial or legislative clarification may be necessary to definitively resolve this issue. It is, nevertheless, my opinion that that the obligation to register ultimately is upon the individual offender. Section 4 identifies the individuals subject to the registration requirements of Act 989, and section 11 provides that a person who fails to register shall be guilty of a Class D felony. Consequently, such offenders should register with the local law enforcement agency.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] Under Act 989, adjudication of guilt means a plea of guilty, a plea of nolo contendere, a negotiated plea, a finding of guilty by a judge, or a finding of guilt by a jury. Act 989, § 3(4).