# SUPREME COURT OF ARKANSAS

No. CR-15-287

| | |
|---|---|
| JUSTIN JAMAILLE THORNTON<br>APPELLANT | **Opinion Delivered** December 3, 2015 |
| V. | APPEAL FROM THE LINCOLN<br>COUNTY CIRCUIT COURT<br>[NO. 40CR-11-47-1] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE BERLIN C. JONES,<br>JUDGE |
| | <u>REVERSED AND DISMISSED</u>. |

**HOWARD W. BRILL, Chief Justice**

Appellant Justin Thornton appeals from an order of the Lincoln County Circuit Court convicting him of first-degree murder and sentencing him to a term of forty years' imprisonment. On appeal, Thornton contends that the circuit court erred in (1) denying his motion to dismiss the first-degree murder charge because the State did not present sufficient proof of the purposeful-intent element of first-degree murder, (2) denying his motion to dismiss for lack of jurisdiction, (3) denying his motion to dismiss for violation of his right to a speedy trial, (4) denying his motion to dismiss for violation of the Double Jeopardy Clause, and (5) denying his motion to dismiss for violation of his right to due process. We reverse and dismiss.

I. *Factual Background & Procedural History*

Following a bench trial held in February 2013, the Lincoln County Circuit Court found appellant Justin Thornton guilty of capital murder, felon in possession of a firearm,

unauthorized use of a vehicle, and abuse of a corpse for which he was sentenced to life without parole plus ten years for his commission of the murder with a firearm. Thornton appealed to this court, arguing that the circuit court erred in denying his motion for directed verdict on the capital-murder charge because the proof failed to establish that he acted with the requisite premeditation and deliberation. *Thornton v. State*, 2014 Ark. 157, at 1, 433 S.W.3d 216, 217. We held that the evidence was insufficient to support a conclusion that Thornton killed the victim with a premeditated and deliberate intent and, we therefore reversed and dismissed. In doing so, we stated, "While the evidence cannot sustain the charge of capital murder, we offer no opinion about whether it would sustain a lesser offense." *Id*. at 15, 433 S.W.3d at 224. The case was handed down on April 10, 2014.

Following the issuance of our mandate on May 15, 2014, the State did not refile a murder charge against Thornton;[1] rather, the State filed in the circuit court on May 29, 2014, a "Motion for Court to Consider Lesser-Included Offenses." In its motion, the State argued that, because this court concluded that there was insufficient evidence to sustain a charge for capital murder, the circuit court should "now consider the lesser included offenses of murder in the 1st degree, murder in the 2nd degree and manslaughter" and that, "[s]hould the [circuit] court find the evidence sufficient to sustain a conviction for a lesser offense, it should enter a judgment of conviction and sentence the defendant appropriately." Thornton argued

---

[1]The State notes in its brief on appeal that the Supreme Court of the United States has left open the question of whether the State could, consistent with the Double Jeopardy Clause of the United States Constitution, try a defendant for a lesser-included offense in the event that the conviction of the greater offense was voided due to insufficiency of the evidence. *See Greene v. Massey*, 437 U.S. 19, 25 n.7 (1978).

that the State's motion should be denied because this court did not remand the case to the circuit court for any further rulings or findings of fact; rather, this court reversed and dismissed. In its reply, the State contended that "[t]he fact that the capital murder conviction was reversed and dismissed rather than remanded does not have any bearing on whether [the circuit] court can now consider lesser-included offenses . . . Because this was a bench trial instead of a jury trial, the supreme court's decision to grant defendant's motion and dismiss the capital murder charge simply puts the [circuit] court back into the position it would have been in had it dismissed the capital murder charge during the trial."

The circuit court granted the State's motion and set a hearing for December 1, 2014. At the hearing, Thornton argued that the circuit court lacked jurisdiction to consider the lesser-included offenses, that the conviction of a lesser-included offense following the reversal and dismissal of a greater offense violates double-jeopardy principles, that his right to a speedy trial was violated, and that the circuit court denied him due process at the hearing when it did not allow him to argue that there was insufficient evidence to sustain convictions of the lesser-included offenses. The circuit court rejected Thornton's arguments, ruled that the evidence from the February 2013 bench trial was sufficient to prove that Thornton acted with purpose in causing the death of the victim, and found Thornton guilty of first-degree murder.[2] The circuit court then sentenced Thornton, as a habitual offender, to forty years' imprisonment for first-degree murder, enhanced by ten years for its commission with a

_____

[2]A person commits murder in the first degree if with a purpose of causing the death of another person, the person causes the death of another person. Ark. Code Ann. § 5-10-102(a)(2) (Repl. 2013).

firearm.[3]

## II. *Jurisdiction*

As a threshold matter, this court must determine whether the circuit court had jurisdiction to hear the State's "Motion for Court to Consider Lesser-Included Offenses" following this court's reversal and dismissal in *Thornton*. This court's opinion and mandate in 2014 reversed and dismissed Thornton's conviction for capital murder. Nevertheless, the State contends that the letter and spirit of this court's opinion and mandate conferred jurisdiction on the circuit court to consider lesser-included offenses. According to the State, we "invited" the circuit court to hear the State's "Motion for Court to Consider Lesser-Included Offenses" when we stated that we "offer[ed] no opinion about whether [the evidence] would sustain a lesser offense." 2014 Ark. at 15, 433 S.W.3d at 224. We disagree. Because the issue of whether the evidence would sustain a lesser offense was not before the court in 2014, any opinion we offered on that issue would have been advisory. It is not the practice of this court to anticipate future litigation and issue advisory opinions. *See Wright v. Keffer*, 319 Ark. 201, 203–04, 890 S.W.2d 271, 272 (1995).

Here, the State would have us hold that, in *Thornton*, when we stated that the case was

---

[3]The circuit court noted that Thornton's remaining convictions and sentences were not affected by this court's reversal and dismissal in *Thornton*, 2014 Ark. 157, 433 S.W.3d 216. Thus, the amended sentencing order entered December 16, 2014, reflected that Thornton was sentenced to an aggregate total of seventy years' imprisonment: concurrent terms of forty years' imprisonment for first-degree murder, twenty years' imprisonment for felon in possession of a firearm, and one year in the county jail for unauthorized use of vehicle; a consecutive term of twenty years' imprisonment for abuse of a corpse; and a consecutive term of ten years' imprisonment for the firearm enhancement. In the instant appeal, Thornton challenges only his conviction and sentence for first-degree murder.

reversed and dismissed, we meant that the case was reversed and remanded. This we will not do. *See Eichelburger v. State*, 323 Ark. 551, 557, 916 S.W.2d 109, 113 (1996) (explaining that if substantial evidence was presented, but prejudicial error occurred, the case is reversed and remanded, but "[i]f the evidence [is] insufficient the case is reversed and dismissed").

We note that the State's position on appeal is inconsistent with its position in response to Thornton's pro se petition for writ of mandamus filed on December 17, 2014. In his petition, Thornton sought to have this court direct the circuit judge to enter a new or amended judgment reflecting the dismissal of the capital-murder charge by this court in *Thornton*. The State contended that, although Thornton appeared to allege that the Arkansas Department of Correction had not received the mandate in his case, and believed that the opinion issued by this court remanded the case to the circuit court to issue a new judgment-and-commitment order, this court's opinion did not include a remand to the circuit court. Specifically, the State asserted that this court "did not remand the case to the circuit court to enter a new order or take any other action related to the reversed and dismissed capital-murder conviction." We agreed, stating, "Our decision reversed and dismissed petitioner's conviction for capital murder; there was no remand requiring any action by the trial court." *Thornton v. Jones*, 2015 Ark. 109, at 2 (per curiam).

Thus, we hold that, because the conviction was reversed and dismissed, the circuit court did not have jurisdiction to hear the State's "Motion for Court to Consider Lesser-Included Offenses." Accordingly, we reverse and dismiss.

Reversed and dismissed.

WOOD, J., concurs.

BAKER, GOODSON, and HART, JJ., dissent.

**KAREN R. BAKER, Justice, dissenting.**    Because the majority reversed and dismissed Thornton's conviction in *Thornton v. State*, 2014 Ark. 157, 433 S.W.3d 216 ("*Thornton I*"), I cannot join the majority's opinion.

Simply put, the lack of clarity in *Thornton I* has caused the majority in Thornton's case today to attempt to craft a solution that supports *Thornton I* and reverses and dismisses Thornton's first-degree-murder conviction that resulted from a hearing in the circuit court following the majority's decision in *Thornton I*.  The record demonstrates that upon return to the circuit court, the circuit court expressed its reservation on whether it retained jurisdiction to address "the lesser includeds": "[T]he [Supreme] court specifically said they were not addressing the lesser includeds.  Well, it says, 'We offer no opinion about whether it would sustain a lesser offense.' . . . This Court would readily admit that this is a case of first impression to this Court.  This court had sought far and near, low and high trying to find a case like this case, and it not one like this case, then one similar to this case and unfortunately was able to find a case."  I sympathize with the circuit court's dilemma.  Nevertheless, because the majority reversed and dismissed Thornton's conviction in *Thornton I*, there was no remand or return to circuit court.  Pursuant to the majority's mandate in *Thornton I*, Thornton has no conviction against him at this juncture.

In *Thornton I*, the majority explained that, at trial,

[t]he circuit court denied the motion [for directed verdict]. Thornton was the only defense witness and at the close of all the evidence, he again renewed his motions for

a directed verdict. The circuit court denied the motions and took the case under advisement. The court then ruled from the bench that the State had proved the charges of capital murder, possession of a firearm, and abuse of a corpse. But, the circuit court reduced the felony-theft charge to a misdemeanor count of unauthorized use of a vehicle. The circuit court entered a sentencing order on March 4, 2013, finding Appellant guilty as set forth above.

2014 Ark. at 152, 3–4, 433 S.W.3d at 218–19.

The majority in *Thornton I* ultimately held:

[We] must reverse Thornton's conviction for capital murder. While the evidence cannot sustain the charge of capital murder, we offer no opinion about whether it would sustain a lesser offense. *See, e.g.*, *Acuff v. State*, 253 Ark. 85, 484 S.W.2d 698 (1972).[1]

Reversed and dismissed.

Subsequent to the majority opinion, the State filed a petition for rehearing asserting that "the court should clarify that the convictions of felony theft of property, possession of a firearm, and abuse of a corpse still stand." In a 5–2 decision, the majority denied the State's petition for rehearing without opinion. Accordingly, a majority of this court denied the petition for rehearing after the majority dismissed Thornton's conviction citing to a case that was reversed and remanded for further proceedings.

Thereafter, the majority issued its mandate and "reversed and dismissed" his conviction. The mandate stated in pertinent part:

THIS CRIMINAL APPEAL WAS SUBMITTED TO THE ARKANSAS SUPREME COURT ON THE RECORD OF THE LINCOLN COUNTY CIRCUIT COURT AND BRIEFS OF THE RESPECTIVE PARTIES. AFTER DUE CONSIDERATION, IT IS THE DECISION OF THE COURT THAT

---

[1]I must note that the citation to *Acuff* has led to the confusion as well because, in *Acuff*, we reversed and remanded Acuff's case—we did not reverse and dismiss the case.

THE CONVICTION IS REVERSED AND DISMISSED FOR THE REASONS SET OUT IN THE ATTACHED OPINION.

BAKER AND GOODSON, JJ., DISSENT.

Subsequent to the majority's disposition in *Thornton I*, Thornton filed a writ of mandamus in which Thornton sought to have this court direct the circuit court judge to enter an amended order reflecting the dismissal of the capital-murder charge by this court in *Thornton I*. We denied the writ and held,

> [O]ur decision reversed and dismissed petitioner's conviction for capital murder; there was no remand requiring any action by the trial court. Because the trial court was not directed to enter an amended judgment, petitioner has not established that Judge Jones was obligated to enter an amended judgment or that he has failed to perform a duty imposed by this court.

*Thornton v. Jones*, 2015 Ark. 109, at 2.

After the majority's mandate in *Thornton I* was issued, the State returned to the circuit court and filed a "Motion for Court to Consider Lesser-Included Offenses." In other words, despite this court's reversal and dismissal, the matter was again taken up by the circuit court. Thornton was convicted of first degree murder, and returns yet again to this court on appeal.

The majority states that Thornton's capital murder charge was dismissed. This statement is flawed for two reasons. First, the majority's mandate in *Thornton I* did not state that the capital-murder conviction was dismissed. Instead, the majority's mandate stated that the conviction was reversed and dismissed. Second, the majority here, as the majority did in *Thornton I*, again fails to address the remaining charges and simply glosses over the fact that the majority's mandate in *Thornton I* reversed and dismissed Thornton's conviction.

Further, the majority states in footnote 3 that "[t]he circuit court noted that

8

Thornton's remaining convictions and sentence were not affected by this court's reversal and dismissal in *Thornton*, 2014 Ark. 157, 433 S.W.3d 216." Thus, the majority states, "the amended sentencing order . . . reflected that Thornton was sentenced to an aggregate total of seventy years' imprisonment: concurrent terms of forty years' imprisonment for first-degree murder, twenty years' imprisonment for felon in possession of a firearm, and one year in the county jail for unauthorized use of a vehicle; a consecutive term of twenty years' imprisonment for abuse of a corpse; and a consecutive terms of ten years' imprisonment for the firearm enhancement." The majority concludes with the statement that, "i[n] the instant appeal, Thornton only challenges his conviction and sentence for first-degree murder." The majority appears to be implying from this statement that the convictions that are unchallenged remain. However, the statement was made in a case that the majority now holds the court lacked jurisdiction to hear and the statement of the circuit court's opinion and the amended sentencing order are insignificant. The imperative language that the majority fails to identify is that, despite the majority opinion or the circuit court's position, the majority's mandate in *Thornton I* unequivocally reversed and dismissed Thornton's conviction. The majority in *Thornton I* did not sever the convictions, on the charges other than capital murder, as we have done in other cases. In *Martin v. State*, 290 Ark. 293, 297, 718 S.W.2d 938, 940 (1986), we addressed the issue of the mandate in a case with multiple convictions and explained,

> The remaining question is, "What mandate should be issued?" The offenses charged, first degree murder and first degree battery, are separate and distinct offenses, defined by separate and distinct statutes, and each charge required separate and distinct evidence for conviction. When a judgment in a criminal case is correct as to one count, but erroneous as to another, as in this case, we have the power to sever the judgment, affirm the count on which the appellant was properly convicted, and reverse

and grant a new trial as to the other. Such a procedure is used by the Eighth Circuit Court of Appeals, *United States v. Greene*, 591 F.2d 471 (8th Cir. 1979), by our Court of Appeals, *Gross v. State*, 8 Ark. App. 241, 650 S.W.2d 603 (1983), and by other states, *see*, *e.g.*, *People v. Schnebley*, 27 A.D.2d 639, 275 N.Y.S.2d 763 (1966).

*See also Nard v. State*, 304 Ark. 159, 161, 801 S.W.2d 634, 636 (1990); *Parker v. State*, 292 Ark. 421, 436–37, 731 S.W.2d 756, 764 (1987); *Callahan v. State*, No. CACR 92-1494, 1993 WL 540142, at *1 (Ark. Ct. App. Dec. 15, 1993). Here, because the majority failed to sever the convictions, the majority's mandate in *Thornton I*, is clear—Thornton's entire conviction was reversed and dismissed, including the possession of a firearm, abuse of a corpse, and the unauthorized use of a vehicle. If the majority in *Thornton I* had intended to only reverse and dismiss Thornton's capital-murder conviction, they could have severed the charges and affirmed all of the convictions. They might also have clarified their decision when the State petitioned for rehearing and specifically asked that they do so. The majority could have also done any of the following: reversed and remanded the case for further proceedings; severed the convictions, and affirmed in part and reversed and remanded in part; entered a judgment on the remaining offenses based on the evidence; or severed the convictions and reversed and dismissed the capital-murder conviction allowing the State to attempt to avoid double-jeopardy violations and refile a first-degree murder charge or other homicide offense. However, that is not what the majority did. The majority reversed and dismissed Thornton's conviction.[2]

---

[2]This position is supported by the State in its brief wherein it recognizes that "[T]he Court reviews judgments, not individual convictions in judgments, *see e.g.*, Arkansas Rule of Appellate Procedure – Criminal 2 (2014)."

Accordingly, in *Thornton I*, the majority's mandate unambiguously reversed and dismissed Thornton's conviction. Stated differently, the majority reversed and dismissed Thornton's entire judgment and conviction, cannot modify that mandate, and Thornton no longer has a conviction against him. *See Milsap v. Holland*, 186 Ark. 895, 56 S.W.2d 578 (1933); *Stroud v. Crow*, 209 Ark. 820, 823, 192 S.W.2d 548, 549 (1946) (the supreme court cannot amend its opinion after lapse of the term in which it was handed down.)[3] Therefore, Thornton's return to this court today and the majority's reversal and dismissal of his appeal today is nonsensical because his entire case was dismissed by the mandate issued in *Thornton I*.[4]

After the majority's mandate in *Thornton I* was issued, the state's only option was to refile all charges they sought to bring against Thornton. That the state was aware of the effect

---

[3]*See also Ginn v. Penobscot Co.*, 342 A. 2d 270, 274 (Me. 1975) ("Absent a statutory or rule provision to the contrary, the general rule is that, after an appellate court has determined the issues involved in the case submitted to it and caused its judgment in conformity with such determination to be entered and the case, together with the rescript of decision, to be remanded to the lower court, the appellate court thereafter has no power to reconsider, alter, or modify its decision. An appellate court, generally speaking, is without power to recall a mandate regularly issued for the purpose of correcting judicial error. *See*, 5B C.J.S. Appeal and Error s 1996; 5 Am. Jur. 2d s 1008."); 5 C.J.S. Appeal and Error § 1175 ("The rule most generally adhered to is that an appellate court is without power to recall a mandate regularly issued without mistake, inadvertence, fraud, prematurity, or misapprehension, and that it will not recall the mandate for the purpose of re-examining the cause on the merits, or to correct judicial error. Likewise, a mandate may not be recalled for the purpose of granting supplemental relief.").

[4]It is also unclear if the majority today is reversing and dismissing Thornton's first-degree murder conviction or simply dismissing the appeal because the majority holds: "We reverse and dismiss[,]" "REVERSED AND DISMISSED" and "Accordingly, we reverse and dismiss."

of the mandate in *Thornton I* is clear from their petition for rehearing asking this court to clarify that Thornton's convictions other than his capital murder conviction still stood. The state's petition was denied. At that point, the state's only option was to once again file charges against Thornton for all offenses. No doubt the state's concerns about double-jeopardy impacted on the decision to return to the circuit court and file their petition to consider lesser offenses; however, it was abundantly clear after this court's per curium opinion denying Thornton's petition for mandamus that the trial court had no jurisdiction to consider such a petition. *Thornton v. Jones*, 2015 Ark. 109, 1.

Finally, the majority here does not address these issues or the existing precedent discussed above. Additionally, the majority fails to recognize that criminal laws are to be strictly construed in favor of the accused. *See Lewis v. State*, 220 Ark. 259, 247 S.W.2d 195 (1952); *Dowell v. State*, 283 Ark. 161, 162, 671 S.W.2d 740, 741 (1984). Thus, I respectfully dissent.

HART, J., joins.

**COURTNEY HUDSON GOODSON, Justice, dissenting.** In the first appeal of this case, a majority of this court erroneously concluded that the evidence was not sufficient to support Thornton's conviction for capital murder. *See Thornton v. State*, 2014 Ark. 157, 433 S.W.3d 216 (Goodson, J., dissenting). Today, this court compounds that error by misinterpreting the previous opinion and by misapplying the mandate rule to hold that the circuit court did not have the authority to consider Thornton's unquestionable guilt of a lesser-included offense. Once again, I must dissent.

It should be remembered that this case involves the untimely death of a young man named Kwame Turner.  The evidence produced at the trial, when appropriately viewed in the light most favorable to the State, shows that Thornton shot Turner in the head with a .45–caliber handgun while Turner was sitting in a chair inside Thornton's home, where he lived alone.  A neighbor passing by Thornton's house heard the gunshot. Thornton emerged from his home and told the neighbor that his gun had discharged when he dropped it on the floor.  However, the bullet that struck Turner entered his head behind and above the left ear and continued in a *downward* trajectory, at an angle from left to right, where it exited Turner's right jaw and then lodged in his right arm.  Using Turner's own vehicle to conceal his misdeed, Thornton dumped Turner's body in a ditch and left the car in a parking lot.  After the authorities developed Thornton as a suspect in Turner's death, the police found him hiding in a hotel room registered in another person's name.  He also gave a false name to the police in an effort to avoid arrest.  During his incarceration before the trial, Thornton wrote a letter in which he threatened the lives of witnesses who might testify against him.  Sitting as the trier of fact with all of this evidence before it, the circuit court found Thornton guilty of capital murder, theft of property, and abuse of a corpse.

In the first appeal, Thornton's sole point for reversal was that the evidence was insufficient to support his conviction for capital murder.  To my everlasting disbelief, a majority of this court found merit in Thornton's contention that proof of premeditation and deliberation was lacking.  Instead of focusing on whether substantial evidence in the record supported the conviction, the only issue in question, the majority was obsessed with the

circuit court's oral pronouncement of guilt, even though Thornton did not claim any error

flowing from the court's remarks. Also to Thornton's good fortune, the majority glossed over

the abundant and substantial evidence establishing the element of intent and his consciousness

of guilt: the nature and location of the wound and the type of weapon used; Thornton's false

and improbable statement to explain suspicious circumstances; his attempt to silence witnesses;

his giving of a false name and flight to avoid arrest; and his attempts to cover up his

connection to the crime, including the disposal of Turner's body.

In concluding the opinion, the majority wrote,

> Accordingly, because the circuit court engaged in speculation and conjecture in determining that Thornton acted with premeditation and deliberation and improperly shifted the burden of proof when weighing the evidence, **we must reverse Thornton's conviction for capital murder. While the evidence cannot sustain the charge of capital murder, we offer no opinion about whether it would sustain a lesser offense.** *See, e.g.*, *Acuff v. State*, **253 S.W.2d 85, 484 S.W.2d 698 (1972).**
>
> **Reversed and dismissed**.

*Thornton*, 2014 Ark. 157, at 14–15, 433 S.W.3d at 224 (*Thornton I*) (bold type added).

The mandate of this court, issued on May 15, 2014, stated as follows:

> THIS CRIMINAL APPEAL WAS SUBMITTED TO THE ARKANSAS SUPREME COURT ON THE RECORD OF THE LINCOLN COUNTY CIRCUIT COURT AND BRIEFS OF THE RESPECTIVE PARTIES. AFTER DUE CONSIDERATION, **IT IS THE DECISION OF THE COURT THAT THE CONVICTION IS REVERSED AND DISMISSED FOR THE REASONS SET OUT IN THE ATTACHED OPINION**.

(Bold type added.)

Following the issuance of the mandate, the State filed a motion asking the circuit court

to consider the lesser-included offenses, as specifically referred to by this court in the majority opinion. Over Thornton's objection, the circuit court granted the State's motion, and based on the record of trial, the court found Thornton guilty of first-degree murder and sentenced him to a term of forty years' imprisonment.

In this second appeal, the majority now holds that (1) the issue whether the evidence would support a finding of guilt on a lesser-included offense was not before this court in the first appeal, and (2) the circuit court did not have jurisdiction to consider lesser-included offenses because this court "reversed and dismissed" in the first appeal. The majority is wrong on both counts.

The heart of this matter lies in the proper interpretation of this court's mandate and opinion in *Thornton I*. A "mandate" is the official notice of the action of the appellate court, directed to the court below, advising that court of the action taken by the appellate court, and directing the lower court to have the appellate court's judgment duly recognized, obeyed, and executed. *Johnson v. State*, 366 Ark. 390, 235 S.W.3d 872 (2006) (Johnson IV). Under the mandate rule, "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 471, at 6, 449 S.W.3d 283, 287 (quoting *Dolphin v. Wilson*, 335 Ark. 113, 118, 983 S.W.2d 113, 115 (1998)). We have observed that the "lower court is vested with jurisdiction only to the extent conferred by the appellate court's opinion and mandate." *City of Dover v. Barton*, 342 Ark. 521, 525, 29 S.W.3d 698, 700 (2000). Our law requires the circuit court to implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the

circumstances it embraces. *Johnson, supra; Smith v. AJ & K Operating Co.*, 365 Ark. 229, 227 S.W.3d 899 (2006).

This court applied these principles in *Johnson IV*, *supra*. There, this court had previously reversed and remanded for the testing of negroid hairs based on our understanding that the negroid hairs had not been retested. *Johnson v. State*, 356 Ark. 534, 157 S.W.3d 151 (2004) (*Johnson III*). Also, according to the opinion in *Johnson III*, the DNA testing that had been conducted indicated that the probability was 1 in 250 that the DNA from the negroid hairs belonged to an African American other than Johnson. We stated that the "1 in 250 ratio is so broad and includes so many persons other than Mr. Johnson that he is entitled to retesting under Act 1780." *Johnson III*, 356 Ark. at 550, 157 S.W.3d at 163–64. On remand, the circuit court did not order retesting of the hairs as this court had directed. Instead, the circuit court entered an order finding that the State had complied with this court's requirement that the hairs be retested, observing that the hairs had actually been retested in preparation for a second trial in 1997 and that this test had revealed a statistical frequency of 1 in 720 million that the hairs belonged to someone other than Johnson in the African American population.

On appeal from that decision in *Johnson IV*, Johnson argued that the circuit court had defied our mandate by failing to have the hairs retested. This court disagreed, noting that the circuit court did not reopen the case or consider any issues other than the retesting of the negroid hairs. In so holding, we reasoned that the point of error in the *Johnson III* opinion concerned the troubling 1 in 250 probability, and we concluded that the circuit court had

correctly found that the hairs had been retested after that point of error to reflect a probability of 1 in 720 million. Accordingly, this court held that the circuit court had complied with the letter and spirit of our mandate in *Johnson III*, and we stated that retesting was no longer necessary.

Our decision in *Arkansas State Highway Commission v. Townsend*, 317 Ark. 581, 879 S.W.2d 447 (1994) (*Townsend II*), is also instructive. In that case, we had agreed with the Highway Commission's argument in a prior appeal that the chancellor had erred by not granting its request for an injunction to compel the removal of structures from its right-of-way. *Ark. State Highway Comm'n v. Townsend*, 313 Ark. 702, 858 S.W.2d 66 (1993) (*Townsend I*). With that holding, this court reversed and "dismissed" the original case. *Id* at 706, 858 S.W.2d at 69. After the decision in *Townsend I*, the Highway Commission filed a petition in the same proceeding asking the chancellor to enforce this court's opinion and mandate and to require the removal of the structures. The chancellor declined that request, accepting Townsend's argument that she lacked jurisdiction to entertain the Highway Department's petition once this court had "dismissed" the action on appeal. The Highway Commission appealed the chancellor's dismissal of its petition to enforce our mandate and opinion. In *Townsend II*, this court construed the mandate along with the opinion in *Townsend I*, wherein we had found error in the chancellor's refusal to grant an injunction. In reading the two together, we rejected Townsend's argument that the chancellor was powerless to enforce our holding with regard to the blockage of the right-of-way. We also found no merit in Townsend's contention that our use of the phrase "reversed and dismissed"

trumped the holding of the opinion so as to deprive the chancery court of jurisdiction. This court said,

> Granted, our signals to the trial court were not crystal clear in *Townsend I* as we reversed and dismissed the decree of the court when we should have reversed and remanded the matter. However, the body of the opinion was quite clear in its intended result, despite our stated disposition.

*Townsend II*, 317 Ark. at 585, 879 S.W.2d at 449.

In the case at bar, the previous opinion recites that "we must reverse Thornton's conviction for capital murder." *Thornton*, 2014 Ark. 157, at 14–15, 433 S.W.3d at 224. It concludes with the language "reversed and dismissed." *Id*. The mandate also states that this court reversed and dismissed "the conviction" and that we did so "for the reasons set out in the attached opinion." In the opinion, this court determined that the evidence was not sufficient to support the conviction for capital murder. Accordingly, a plain reading of the opinion and the mandate reveals that this court reversed and dismissed only Thornton's conviction for capital murder.

The majority in the present appeal correctly notes that it can be appropriate to reverse and dismiss when the evidence is insufficient to sustain the finding of guilt. *See Harris v. State*, 284 Ark. 247, 681 S.W.2d 334 (reversing and dismissing where the evidence of the defendants' connection with the drug-manufacturing operation was insufficient to support their convictions for manufacturing a controlled substance). However, that is not all that this court said in *Thornton I*. The final sentence of text states that "[w]hile the evidence cannot sustain the charge of capital murder, we offer no opinion about whether it would sustain a lesser offense. *See, e.g.*, *Acuff v. State*, 253 S.W.2d 85, 484 S.W.2d 698 (1972)." *Thornton I*,

18

2014 Ark. 157, at 15, 433 S.W.3d at 224. In *Acuff*, although completely ignored by the majority here, this court held that the evidence did not support Acuff's conviction for assault with intent to kill. We said, however, "this is not to say that it would not sustain a lesser offense." Accordingly, this court in *Acuff* reversed and remanded for that determination to be made. The disposition in *Acuff* was eminently correct. When the error has no bearing on the issue of guilt versus innocence, remanding for the consideration of lesser-included offenses, as we did in *Acuff*, is entirely consistent with our well-established caselaw. We have long held that when the evidence is insufficient to convict for a certain crime, but there is sufficient evidence to convict for a lesser-included offense of that crime, this court may, depending on the facts, "reduce the punishment to the maximum for the lesser offense, reduce it to the minimum for the lesser offense, fix it ourselves at some intermediate point, remand the case to the trial court for the assessment of the penalty, or grant a new trial either absolutely or conditionally." *Dixon v. State*, 260 Ark. 857, 862, 545 S.W.2d 606, 610 (1977) (quoting *Clark v. State*, 246 Ark. 876, 880, 440 S.W.2d 205, 207 (1969)); *see also Tigue v. State*, 319 Ark. 147, 889 S.W.2d 760 (1994); *Davidson v. State*, 305 Ark. 592, 810 S.W.2d 327 (1991); *Trotter v. State*, 290 Ark. 269, 719 S.W.2d 268 (1986).

Regrettably, the majority opinion in *Thornton I* is no model of clarity. That being so, this is an occasion where this court must look beyond mere words to interpret the import of the mandate and the opinion in the prior appeal, as "it is not the form of the order on the first appeal that controls, but the substance of that order." *Glover v. Woodhaven Homes, Inc.*, 346 Ark. 397, 400, 57 S.W.3d 211, 215 (2001) (quoting *Snapp v. State Farm Fire & Cas. Co.*, 388

P.2d 884, 887 (Cal. 1964)); *see also Johnson v. Cincinnati Ins. Co.*, 375 Ark. 164, 289 S.W.3d 407 (2008). The point of error in *Thornton I* was this court's conclusion that the evidence of premeditation and deliberation was insufficient. Consequently, this court reversed and dismissed the conviction for capital murder. Because the court's determination had nothing to do with guilt or innocence, this court, based on the facts of the case, exercised the option to express no opinion on Thornton's guilt of the lesser-included offenses. However, it is evident by that statement and the citation to the decision in *Acuff* that this court left open the question of Thornton's guilt on lesser-included offenses. The majority in this case is simply incorrect by stating that the issue of lesser-included offenses was not before the court. The reference to the decision in *Acuff* cannot be dismissed as mere surplusage, and the question of lesser-included offenses became relevant and was indeed before the court once it had determined that the evidence did not sustain the greater offense. *Dixon*, *supra*. Because the point of error in *Thornton I* concerned the conviction for capital murder, and because the opinion pointedly left open and did not foreclose consideration of the lesser-included offenses, I cannot conclude that the circuit court was deprived of jurisdiction and that it did not have the authority to consider Thornton's guilt on any of the lesser-included offenses. Consistent with the opinion, the circuit court did not reopen the case to examine any issues other than the lesser-included offenses. The stated disposition in *Thornton I* cannot be viewed in isolation. On the contrary, our caselaw establishes that we must examine the entire opinion, including our citation to *Acuff* and the acknowledgment of lesser-included offenses. In my view, the circuit court complied with the letter and spirit of our opinion and mandate in

*Thornton I.* Therefore, I would not reverse the circuit court on this basis.

Moreover, this court's per curiam denying Thornton's petition for writ of mandamus is supportive of my view. *Thornton v. Jones*, 2015 Ark. 109 (per curiam). There, Thornton sought the writ to require the circuit court to enter an amended judgment to reflect the dismissal of the capital-murder conviction. In denying the petition, we said

> As the respondent points out, our decision reversed and dismissed petitioner's conviction for capital murder; there was no remand requiring any action by the trial court. Because the trial court was not directed to enter an amended judgment, petitioner has not established that Judge Jones was obligated to enter an amended judgment or that he has failed to perform a duty imposed by this court.

*Id*. at 2. Significantly, this court did not hold that the circuit court lacked jurisdiction to enter an amended judgment based on the disposition in *Thornton I.* Instead, we merely stated that the prior decision did not direct the circuit court to take any action. Clearly, this court did not say that the previous decision prohibited the circuit court from acting. Consequently, the per curiam does not require this court to now hold that the circuit court lacked jurisdiction to consider lesser-included offenses.

In a nutshell, the circuit court did not violate the mandate rule by taking up the lesser-included offenses and by finding Thornton guilty of first-degree murder. Accordingly, I dissent.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.